**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

| | |
|---|---|
| In re:<br><br>UNI SYSTEMS DO BRASIL LTDA., a<br>Brazilian foreign entity,<br><br>Debtor in a Foreign Proceeding. | Chapter 15<br><br>Case No. _____ |

### DECLARATION OF THE FOREIGN REPRESENTATIVE IN SUPPORT OF
### CHAPTER 15 PETITION FOR RECOGNITION OF A FOREIGN MAIN PROCEEDING

I, Felipe Barbi Scavazzini, being sworn, declare, under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1.    I am a licensed Brazilian attorney as well as representative of Compasso Administração Judicial Ltda. ("Compasso").

2.    Compasso is the court-appointed judicial administrator (the "Judicial Administrator"), and duly-authorized foreign representative of the Brazilian judicial reorganization proceeding (the "Brazilian Proceeding") of the above-captioned debtor, Uni Systems do Brasil Ltda. ("Uni Systems") ("Debtor"), pending before the 3rd Civil Court of the Judicial District of Sertãozinho, State of São Paulo, Brazil (the "Brazilian Court"), pursuant to the Brazilian Bankruptcy and Judicial Reorganization Law ("Brazilian Bankruptcy Law") under the laws of the Federative Republic of Brazil ("Brazil").

3.    Compasso is the only authorized representative to administer the Brazilian Proceeding.

4.    Pursuant to Article 22 of the Brazilian Insolvency Law, I am subject to supervision by the Brazilian Court and may be required to provide specific information or report on the progress

and management of the proceedings. I also report to the Brazilian Court and to the creditors of Uni

Systems regarding the progress of the proceedings and significant legal acts.

     5.     My address is as follows:

Compasso Administração Judicial Ltda.
Felipe Barbi Scavazzini
Av. Presidente Vargas, 2121, Salas 801/810 - CEP 14020-525
Jardim Santa Ângela, Ribeirão Preto/SP, Brazil

     6.     For purposes of this proceeding, I respectfully request that any correspondence be

sent, in addition to the address provided above, to:

Attn: Gabriela M. Ruiz
King & Ruiz LLP
2 S. Biscayne Blvd, Suite 3200
Miami, Florida 33131

     7.     In compliance with section 1515 of Title 11 of the United States Code, 11 U.S.C.

§§ 101–1532 (as amended, the "Bankruptcy Code"), and Rule 1007(a)(4) of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), and after consultation with my U.S. counsel, King

& Ruiz LLP ("King & Ruiz"), I respectfully submit this Declaration in support of the petition filed

at my direction contemporaneously herewith (together with the form chapter 15 petition filed

contemporaneously herewith, the "Chapter 15 Petition"). The Chapter 15 Petition requests entry of

an order, substantially in the form attached to the Chapter 15 Petition as **Exhibit 1** (the "Proposed

Order"), recognizing the Brazilian Proceeding as a "foreign main proceeding" pursuant to section

1517 of the Bankruptcy Code and granting certain related relief pursuant to section 1521 of the

Bankruptcy Code.

     8.     I am over the age of 18 and, if called upon, could testify to all matters set forth in

this Declaration. This Declaration sets forth background of Debtor's former business operations and

reported indebtedness, the circumstances leading to the commencement of the Brazilian Proceeding,

2

the relevant material developments in the Brazilian Proceeding leading to the commencement of

this Chapter 15 case, and the factual bases for the relief requested in the Chapter 15 Petition. Except

where otherwise indicated, all facts set forth in this Declaration are based upon my personal

knowledge or learned from my review of relevant documents. Where matters are based on

information supplied to me, those matters are true to the best of my information, knowledge, and

belief. I am fluent in English and execute this Declaration without the aid of a translation or

translator.

## FACTUAL BACKGROUND

### A.    Debtor's Corporate History

9.    Debtor began operating in 1995 under the trade name Barlou, with Joseph Arthur

Paul Jacquelin and his wife Roseli Aparecida de Oliveira Jacquelin as shareholders. A year later, in

1996, the current shareholders, Francesco Scipioni and Marco Antono Pastorelli, were issued

shares.

10.    In 2004, Debtor underwent extensive changes to its corporate structure, as the

founders of Barlou withdrew from the company. Only two shareholders remained: Scipioni and

Pastorelli. Debtor's corporate purpose also changed to "wholesale trade of machinery, equipment

for earthmoving, mining and construction."

11.    In 2010, Debtor began to invest abroad, first buying 10% of the shares of a Florida

company called Southeast Renewable Fuels, LLC ("Southeast Renewable").

12.    In 2011, Debtor again underwent major changes. Debtor's share capital increased

significantly from BRL 30,000 to BRL 1,000,000.

13.    That same year, Debtor admitted Luis Carlos de Mello as a shareholder. He had

previously been Debtor's financial manager. The following month, Debtor admitted Dartagnan

Baptista Guimarães as a shareholder on the recommendation of de Mello.

14.     Between 2010 and 2012, Debtor undertook two large projects, one involving Southeast Renewable and the other with Spanish company Ecoenergia Montsia Maestrat S.A. ("Ecoenergia"), both of which required Debtor to set up industrial plants. Debtor sought a certain type of bank financing in connection with these projects that required Debtor to raise additional capital.

15.     This need for capital explains the admission of new shareholders. Indeed, Guimarães contributed a National Treasury Letter in the amount of BRL 1,926,480 which would be used as a guarantee for any project Debtor would carry out. As I discovered, however, the National Treasury Bill was forged. I also discovered that Debtor's other shareholders knew about the forgery.

16.     I concluded that Debtor improperly increased its share capital to more than BRL 38,000,000 to deceive financial institutions when searching for financing. The strategy worked, as the company obtained several advance exchange contracts between 2013 and 2015, which exceeded BRL 30,000,000. From 2011 to 2014, Debtor's share capital rose from BRL 30,000 to BRL 38,529,600.

17.     Guimarães also claimed to have donated 53 properties to Debtor. My investigation shows, however, that the properties were not donated, but instead were the object of a purchase and sale between Guimarães and Debtor following a suspicious transfer of the properties to an entity in which Guimarães is a shareholder. As consideration for the 53 properties, Debtor ceded 5% of its shares to Guimarães and agreed to pay BRL 23,927,738. Debtor made the payments for the 53 properties to Race Servicos Aereos Ltda., a separate company owned by Guimarães and his wife.

18.     With this undue increase in capital, Debtor raised approximately BRL 30,000,000 from banks. Debtor also diverted more than BRL 16,000,000 to its shareholders through alleged service-provision contracts that never existed.

4

19.     Based on its investigation, I determined that the significant changes in corporate structure were intended to defraud Debtor, empty it of its assets, and result in bankruptcy.

**B.    The Brazilian Proceeding**

20.     On or about October 11, 2016, Debtor applied for court-supervised reorganization, with liabilities of approximately BRL 50 million. A true and correct copy of the application is attached as **Exhibit A**. Therein, Debtor observed that a factor in its decision to seek reorganization was "the mistaken financial management that led to an exponential increase in its debt, culminating in the exclusion of two of its members for just cause." (Ex. A at 5.)

21.     On or about November 4, 2016, the court-supervised reorganization was granted.

22.     On February 8, 2018, the general creditors held a meeting and voted to reject Debtor's proposed reorganization plan.

23.     Pursuant to Articles 58-A and 73, III, of the Brazilian Bankruptcy Law, the bankruptcy judge must decree a debtor's bankruptcy when a reorganization plan has been rejected by the general meeting of creditors.

24.     On March 19, 2018, the Brazilian Court declared Debtor's bankruptcy and confirmed Compasso's appointment as judicial administrator for Debtor. A true and correct copy of that order is attached as **Exhibit B**.

25.     ██████████████████████████████████████████████████████
██████████████████████████████████████████████████████████████
██████████████████████████████

      a.   ████████████████████████████████████████

      b.   ████████████████████████████████████████████████
████████████████

5

c. █████████████████████████████████████
████████████████████████████████

d. █████████████████████████████████████
█████████████████████████████████████
████████████████

e. █████████████████████████████████████
█████████████████████████

26. █ ██ ███████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
████████████████████████████████████

27. █████████████████████████████████████
█████████████████████████████████████████
█████████████

28. █████████████████████████████████████
███████████████████████████████

a. ████████████████████████████████████
████████████████████████████████████
███████

b. ████████████████████████████████████
██████████████████

c. ████████████████████████████████████
████████████████████████████████████
████████

29. ████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
█████████████████████████████████████████
██████████████

30. █████████████████████

a. ████████████████████████████████████
████████████████████████████████████

█████████████████████████████████████████████████

██

b.    █████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████

31.    ███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████

32.    ███████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

────────────────

████████████████████████████████████████████████████

██████████████████████████████████

## FILING OF CHAPTER 15 PETITION AND BASES FOR RECOGNITION OF BRAZILIAN PROCEEDING AND RELIEF REQUESTED

33.    As the Judicial Administrator of Debtor, I have the authority to investigate Debtor's affairs for the purpose of recovering assets for the benefit of creditors and pursuing any available causes of action.

34.    King & Ruiz has advised me that the Bankruptcy Code defines (i) a "foreign proceeding" as a collective judicial or administrative proceeding relating to liquidation or adjustment of debt, pending in a foreign country, under the supervision of a foreign court and for the purpose of reorganizing or liquidating the assets and affairs of the debtor, and (ii) a "foreign court" as a judicial authority competent to control or supervise a foreign proceeding.

35.    I seek Chapter 15 recognition to, among other things, recover the assets of Debtor, as well as to secure other documentary and testimonial evidence from witnesses in furtherance of its investigative and asset recovery efforts as part of the Brazilian Proceeding.

36.    The Brazilian Proceeding fits squarely within my understanding of the Bankruptcy Code's definition of a "foreign proceeding."

37.    *First*, the Brazilian Proceeding is a "proceeding" in that it is a liquidation proceeding initiated under the Brazilian Bankruptcy Law.

38.    *Second*, the Brazilian Proceeding is "judicial" because it is: (a) a proceeding that the Brazilian Court issued by entering an order granting the petition commencing the Brazilian

Proceeding ("the Commencement Order"); and (b) a proceeding that the Brazilian Court is required to oversee and supervise pursuant Section 3 and 73 of the Brazilian Bankruptcy Law.

39.    *Third*, the Brazilian Proceeding is "collective in nature," as the claims of all creditors will be addressed and resolved in a fair and neutral manner. Article 3 of the Brazilian Bankruptcy Law provides:

> *"Article 3. **The court of the principal place of business of the debtor** or branch of a company headquartered outside Brazil has jurisdiction to approve the extrajudicial reorganization plan, **grant the court-supervised reorganization or adjudicate the bankruptcy.**" (emphasis added)*

40.    *Fourth*, the Brazilian Proceeding is pending in Brazil.

41.    *Fifth*, the Brazilian Proceeding is absolute as explained in Article 3 because it is governed by the Brazilian Bankruptcy Law, which specifies the proceedings for liquidation.

42.    *Sixth*, the objective of the Brazilian Proceeding is collective satisfaction of a debtor's creditors by liquidation of the debtor's assets.

43.    King & Ruiz has also advised me that, to be entitled to recognition as a "foreign main proceeding" under Chapter 15 of the Bankruptcy Code, it must be shown that the foreign proceeding is pending in the jurisdiction where the debtor has its center of main interests ("COMI").

44.    Uni System's COMI is in Brazil. At all times since it was founded in 1995, Uni Systems has been incorporated and registered in Brazil.

45.    As the term is defined in 11 U.S.C. § 101(23), the Brazilian Proceeding is a "foreign proceeding" because it is a collective judicial proceeding under a law relating to liquidation or adjustment of debt in which proceeding Debtor's assets and affairs are subject to the control or supervision of the Brazilian Court for the purpose of Debtor's liquidation.

10

46.    I am not aware of any litigation pending in the United States in which Debtor is a party. Other than the Brazilian Proceeding referenced herein, I am not aware of any other foreign proceedings, as defined in 11 U.S.C. § 101(23), with respect to Debtor.

47.    King & Ruiz has informed me that section 1515(b) of the Bankruptcy Code requires that a petition for recognition of a foreign proceeding be accompanied by a certified copy of the decision commencing such proceeding and appointing the foreign representative (and an English translation thereof). As noted above, by the Commencement Order, the Brazilian Court granted the petition commencing the Brazilian Proceeding for Uni Systems under Brazilian Bankruptcy Law. A true and correct copy of the original Commencement Order  is attached hereto as **Exhibit B**.

48.    Although I reserve the right to do so, currently I am not seeking any provisional relief under section 1519 of the Bankruptcy Code.

49.    After consultation with King & Ruiz, in addition to the relief that will arise automatically upon recognition of the Brazilian Proceeding as a foreign main proceeding, I have decided to request certain additional discretionary relief available under Chapter 15 of the Bankruptcy Code. For the following reasons, I believe such relief is warranted and appropriate under the circumstances.

50.    By the Chapter 15 Petition, I have requested authorization from the Court to examine witnesses and take evidence and information concerning Debtor's assets, affairs, rights, obligations, or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code. In fulfilling my duties as Judicial Administrator in the Brazilian Proceeding, I am undertaking an investigation regarding the assets of Debtor, as well as to secure other documentary and testimonial evidence from witnesses in furtherance of its investigative and asset recovery efforts as part of the Brazilian Proceeding. The

investigation has expanded beyond the borders of Brazil, and pursuing discovery in the United States is an important aspect of the investigation.

51.    The result of the actions described above for which recognition of the Brazilian Proceeding is sought will benefit the creditors because such recognition will permit creditors of Debtor further recovery opportunities to collect on their claims.

52.    By the Chapter 15 Petition, I also have requested that the Court entrust me with the administration, realization, and distribution of all Debtor's assets within the territorial jurisdiction of the United States pursuant to sections 1521(a)(5) and 1521(b) of the Bankruptcy Code. In my capacity as Judicial Administrator of the Brazilian Proceeding, I am responsible for marshalling the Debtor's assets and debts and distributing the proceeds of its assets thereof in accordance with Brazilian Bankruptcy Law and under the supervision of the Brazilian Court. I consider fulfilling these duties with respect to assets identified and collected in the territorial United States to be germane to my appointment as Judicial Administrator and Foreign Representative of the Brazilian Proceeding. Among other benefits, such relief would avoid the administrative cost and delay attendant to requesting similar relief in a piece-meal fashion for every asset subject to the Brazilian Proceeding that I identify as being located within the United States. Of course, I will comply with any notice or reporting requirements that the Court may deem necessary or appropriate.

53.    King & Ruiz has informed me that, before granting additional relief pursuant to section 1521 of the Bankruptcy Code, the Court must be satisfied that the interests of creditors and other interested entities, including Debtor, are sufficiently protected. I believe the additional relief requested in the Chapter 15 Petition satisfies this requirement because, among other reasons, Debtor's creditors are "sufficiently protected" by the treatment afforded to them in the Brazilian Proceeding under Brazilian Bankruptcy Law. U.S. claimants (if any) are not being subjected to

undue inconvenience or prejudice because, among other reasons, Brazilian Bankruptcy Law does not create any additional burdens for foreign creditors to file a claim and confers upon them the same status and rights as creditors in Brazil.

54.　　I am informed by King & Ruiz that discretionary relief under Chapter 15 of the Bankruptcy Code should be consistent with the statutory purposes of Chapter 15 and further international cooperation between U.S. and foreign courts. I believe granting the relief requested by the Chapter 15 Petition is consistent with these goals. By recognizing the Brazilian Proceeding as a "foreign main proceeding" and enjoining creditors from commencing or continuing actions against Debtor or its assets in the United States, the Court would be fostering cooperation between courts in Brazil and the United States and ensuring that the fair and efficient administration of Debtor's assets in the Brazilian Proceeding cannot be disrupted by creditors or other parties in interest outside of Brazil. Moreover, by empowering me to employ the means of investigation and discovery available under United States law and procedure, this Court would be protecting and maximizing the value of U.S. assets belonging to or taken from Debtor and promoting legal certainty by ensuring that I collect and administer those assets in accordance with Brazilian Bankruptcy Law.

55.　　King & Ruiz informed me that the Court may deny any of the relief requested by the Chapter 15 Petition if it determines that granting such relief would be manifestly contrary to the public policy of the United States. King & Ruiz also informed me that this analysis, in part, turns on whether creditors and other parties in interest are provided rights in the foreign proceeding that comport with notions of due process under United States law. To assist in this analysis, I wish to inform the Court that pursuant to Brazilian Bankruptcy Law, creditors and other parties in interest have the right to participate and be heard in the Brazilian Proceeding, consistent with concepts of due process under United States law and jurisprudence as I understand them. In sum, the relief I

13

have requested by the Chapter 15 Petition would effectively extend this insolvency process into the United States, ensuring that assets belonging to or taken from Debtor located within the territorial U.S. do not escape the reach of the Brazilian Proceeding and empowering me to employ the means of investigation and discovery that are afforded as of right to trustees in plenary U.S. bankruptcy cases. Based on my discussions with King & Ruiz, I do not believe that such relief is contrary to United States law or public policy.

Executed this 29 day of October 2025, in São Paulo, Brazil

By: _____

Felipe Barbi Scavazzini